**CONTINENTAL CASUALTY COMPANY**
v.
**DEPARTMENT OF HIGHWAYS, STATE OF LOUISIANA.**
Civ. A. No. 3098.

United States District Court
E. D. Louisiana,
Baton Rouge Division.
Jan. 21, 1966.

Marian Mayer Berkett, Deutsch, Kerrigan & Stiles, New Orleans, La., for plaintiff.

Robert J. Jones, Norman L. Sisson, William T. Kivett, Baton Rouge, La., for defendant.

WEST, District Judge:

Plaintiff, Continental Casualty Company, brings this suit to recover the sum

of $12,028.19 from the Department of Highways for the State of Louisiana, contending that said amount was improperly paid by the defendant to one Sam Carline, Inc., despite the fact that plaintiff had a valid assignment from Sam Carline, Inc. of any and all funds in the hands of defendant and belonging to or owing to the said Sam Carline, Inc. Plaintiff contends that not only was this a valid assignment but that defendant had been duly notified of the assignment and that therefore, plaintiff was damaged in the sum of $12,028.19 when these funds were paid to Carline without the consent of plaintiff.

Both parties to this suit have filed motions for summary judgment. Plaintiff has, in addition thereto, filed an objection to certain interrogatories, and defendant has filed, in addition thereto, motions to dismiss on the grounds of res judicata and for want of jurisdiction. If the latter motion has merit, and the Court believes that it does, there is no need to pass upon the other motions presented.

## FINDINGS OF FACT

1. In May of 1960, Sam Carline, Inc. contracted with defendant, Louisiana Highway Department, to perform a job known as the Cocodrie-Chauvin Highway Job, for the price of $820,428.25. As a condition in this contract, Carline furnished defendant a statutory bond in the penal amount of $820,428.25, executed by plaintiff, Continental Casualty Company, as surety.

2. In February, 1960, Carline entered into another contract with the defendant for the job known as the Samstown-Grand Highway Job. This job involved $180,450.95, for which amount plaintiff, as surety, also furnished a statutory bond.

3. Some time during the course of the performance of the Cocodrie Job, Carline defaulted, and plaintiff, as surety, was called upon under its bond. Plaintiff met all of its obligations under that bond and obtained a complete release therefor from the defendant on July 6, 1964. But in that release the plaintiff expressly reserved all rights that it might have in its own right or by assignment against Carline.

4. Carline did complete the Samstown Job, but during the year 1962, both before and after its completion, certain liens were recorded against the job by materialmen, contractors, and laborers.

5. On or about October 31, 1962, after learning of said liens having been recorded, plaintiff notified defendant that it, plaintiff, held an assignment of any funds which the defendant might be holding for the account of Carline. Similar notices were sent by plaintiff and received by the defendant on two or three occasions subsequent to October 31, 1962.

6. The assignment relied upon by the plaintiff is a general assignment contained in each of the bonds issued by plaintiff which provides in part as follows:

"Fourth, to assign, transfer, and set over, and does or do hereby assign, transfer and set over to the Company, as collateral, to secure the obligations herein and any other indebtedness and liabilities of the undersigned to the Company, whether heretofore or hereafter incurred, such assignment to become effective as of the date of said contract bond but only in event of (1) any abandonment, forfeiture or breach of said contract or of any breach of said bond or bonds, or any of them, or of any other bond or bonds executed or procured by the Company on behalf of the undersigned; * * "

7. While plaintiff sustained a substantial loss on the Cocodrie Job, it sustained no loss whatever on the Samstown Job. It expended slightly over $1,000 for attorney fees and investigation, but lost no money because of any default of Carline on the Samstown Job. Plaintiff contends, however, that the mere filing of liens against the job constituted a default such as to make its assignment under all other bonds become effective. It admits that no funds other than as above mentioned were lost by it on the

Samstown Job because of any default on that job by Carline.

8. At the time the final payment of $12,028.19 was due Carline on the Samstown Job, defendant had received at least three notices that plaintiff was claiming an assignment of funds due and owing to Carline.

9. On March 13, 1963, when the final payment of $12,028.19 on the Samstown Job was made by the defendant, there were recorded liens and claims against this job in the amount of $5,012.34. These liens had been recorded by Gus J. LaBarre, in the amount of $3,600.10; Estate of Gus J. LaBarre, in the amount of $613.64; Jesse E. LeBlanc, in the amount of $604.50; and Louis Levy Grocer Co., Ltd. in the amount of $192.-20.

10. While there is some question as to whether or not the liens of LeBlanc and Levy Grocer Co. had been previously paid, there is no question but that when the final payment of $12,028.19 was made to Carline, it was made jointly to Carline and an attorney representing the lien holders so that the defendant was certain, as it was required to be under the law, that these recorded claims were satisfied before final payment to Carline was made.

11. At most, Carline was, at the time the final payment of $12,028.19 was made by the defendant, entitled to receive for itself only the sum of $7,814.45. This is assuming, as plaintiff contends, that the LeBlanc and Levy Grocer Co. claims had previously been paid. If they had not been previously paid, Carline would only have been entitled to receive $7,-017.75.

## CONCLUSIONS OF LAW

1. Since the jurisdiction of this Court is invoked by the plaintiff on the ground of diversity of citizenship, in order for the Court to accept jurisdiction, the actual amount in controversy must exceed, exclusive of interest, attorney fees, and costs, the sum of $10,-000. 28 U.S.C.A. § 1332.

2. A contractor may not assign his contract price, or any part thereof, to the prejudice of the claims of subcontractors, laborers, or materialmen. Under no circumstances can the assignment of all or of a part of what is due on the contract price be considered as anything more than an assignment of what is due the contractor after all such claims are paid. Shreveport Producing and Refining Corp. v. City of Shreveport, 175 La. 61, 143 So. 5 (1932).

3. It appearing to a legal certainty in this case that even if successful plaintiff could at most recover, through its assignment from Carline, the sum of $7,814.45, and this being less than the jurisdictional amount required by law to give this Court jurisdiction, defendant's motion to dismiss for lack of jurisdiction must, as a matter of law, be granted. Decree will be entered accordingly.