# 98 DTA 136

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL IV DE AGUADILLA Y MAYAGUEZ**

PLACIDO LORENZO GONZALEZ Y LUZ M. CORDERO SALAS
Demandantes-Apelados

v.

GARDE FERRER, SU ESPOSA LETICIA ALMODOVAR
Y LA SOCIEDAD DE BIENES GANANCIALES POR AMBOS COMPUESTA
Demandados-Apelantes

Núm. KLAN-97-00956

San Juan, Puerto Rico, a 24 de marzo de 1998

Panel integrado por su Presidente, el Juez Rossy García,
y los Jueces Martínez Torres y Rodríguez García.

Martínez Torres, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se encuentra ante nos una controversia acerca de la ausencia de una parte que se alega es indispensable, y la base sobre la cual el juzgador emitió su dictamen en una acción reivindicatoria. Concluimos que no estamos ante la ausencia de una parte sin la cual no se podían resolver las controversias y que la muerte del juez que escuchó la prueba no conlleva, bajo las circunstancias particulares de este caso, que tuviera que efectuarse una nueva vista evidenciaria antes de dictarse sentencia. Procedemos a confirmar la sentencia dictada.

### I

El día 3 de agosto de 1989, Plácido Lorenzo González y Cordero Salas presentaron acción reivindicatoria contra Garde Ferrer y Leticia Almodóvar. Alegaron que los últimos ocupaban, sin derecho alguno, un predio de terreno de su propiedad. En la demanda, indicaron que habían adquirido dicha propiedad mediante escritura de compraventa otorgada ante el notario Rafael D. Molinary el día 21 de agosto de 1984.

La descripción de la propiedad adquirida es la siguiente:

*"RUSTICA: Radicada en el barrio Rocha de Moca, Puerto Rico, con una cabida de TRES*

*CUERDAS CINCUENTA CENTIMETROS (3.50) aproximadamente. Colinda por el NORTE con Carretera Estatal número cuatrocientos cuarenta y cuatro (Carr. 444); por el SUR con Angel Illas; por el ESTE con Carretera Municipal y Luis Ramírez; y por el OESTE con sucesión de Angel Ferrer.*

*El predio de terreno que, alegadamente, ocupan los demandados-apelantes en forma ilegal, fue descrito como sigue:*

*"Por el NORTE en 40.208 metros con Angel Ferrer y Carretera 444; por el OESTE en 23.550 metros con Angel Ferrer; por el SUR y el ESTE en 46.866 metros con Plácido Lorenzo."*

Luego de varios trámites procesales, se nombró como perito del tribunal al ingeniero César Barreto Bosques. Sin embargo, la renuncia de éste fue aceptada por el tribunal, toda vez que había asesorado con anterioridad a los demandantes-apelados.

Ante esta situación, se nombró como perito al agrimensor Jorge González Fuentes. Este sometió su informe pericial en el mes de diciembre de 1991. Sin embargo, los demandantes-apelados solicitaron al tribunal que el perito ampliara su estudio, cuyo contenido, alegadamente, *"ignoraba"* algunos títulos.

Así las cosas, se designó como perito al ingeniero Heriberto Suárez Alfonso. Para cumplir con la encomienda, utilizó las mensuras confeccionadas por el agrimensor Jorge González Fuentes. Su informe, rendido el 19 de agosto de 1992, fue determinante en el resultado de este caso.

El día 11 de septiembre de 1992, se celebró la vista en su fondo ante el Hon. José L. Capella Capella. En la vista, el tribunal admitió tres copias certificadas de escrituras y una escritura como prueba (Exhibits 1-4). Además, se presentaron los siguientes testigos: el perito Ing. Heriberto Suárez Alfonso, el co-demandante Lorenzo González y el co-demandado Garde Ferrer.

Así, quedó sometido el caso. Procedió el tribunal a informar que notificaría su decisión por escrito. Sin embargo, ante el deceso del Hon. José L. Capella Capella, el caso se le asignó al Hon. Yamil Suárez Marchán. Este concluyó que la línea divisoria entre las parcelas objeto de la controversia es una sola alineación en dirección de norte a este, y de sur a oeste. Asimismo, señaló que la casa que se menciona en la demanda, y que no pertenece a los demandantes, ubica en la parcela que a éstos les pertenece. Véase Sentencia *Nunc Pro Tunc*. El Tribunal de Primera Instancia reconoció que la base de su decisión fue el informe pericial y la prueba que aparece en autos. Estos factores, alegadamente, facilitaron la búsqueda de la línea central.

Inconformes, acuden ante nos Ferrer y Almodóvar, demandados-apelantes, y solicitan la revocación de la sentencia dictada. Plantean que erró el tribunal al dilucidar la controversia ante la falta de parte indispensable, y que erró el juzgador al apreciar una prueba que nunca tuvo ante sí.

Con el beneficio de la comparecencia de ambas partes, nos encontramos en posición para considerar el recurso. Resolvemos pues, que, ante la ausencia de razón meritoria para intervenir con la apreciación de la prueba, procede confirmar la sentencia dictada.

## II

El primer señalamiento de error de los demandados-apelantes apunta --en esencia-- a la ausencia de parte indispensable. Para considerar el señalamiento es necesario adentrarnos en dos figuras: la parte indispensable y la acción reivindicatoria.

Parte Indispensable

Ferrer y Almodóvar, demandados-apelantes, plantean en su escrito tres asuntos por los que entienden debemos revocar ante la ausencia de parte indispensable. Primero, la alegada existencia de una vivienda en el área cercana a la colindancia que estaba en controversia. La misma pertenecía a un tal Pedro Ferrer. Segundo, que, alegadamente, el perito concluyó, en aquella etapa de su investigación, que esa persona era dueña del predio por haber vivido allí más de 20 años. Por último, señalan que no sólo Plácido Lorenzo González, demandante-apelado, puso en conocimiento al tribunal de la

presencia de la parte indispensable, sino que, del propio plano utilizado por el tribunal para tomar su determinación, se desprende la existencia de una estructura y de que un tal Pedro Ferrer ocupa otra parte del terreno que finalmente le fue adjudicado a Lorenzo González.

Al refutar lo señalado, Lorenzo González alude a la documentación objeto del presente recurso. Además señala que, de existir otra persona que alegare ser dueño, tendrá su oportunidad para dilucidar el asunto en un tribunal de justicia.

Como preámbulo a la discusión de la doctrina aplicable, reiteramos la procedencia del asunto, al hacerse por vez primera, en la etapa apelativa. El planteamiento de parte indispensable es un asunto de índole tan importante y vital que el mismo puede presentarse en apelación por primera vez, o aun suscitarse por el Tribunal Supremo *sua sponte*. José Cuevas Segarra, *Práctica Procesal Puertorriqueña. Procedimiento Civil,* **Publicaciones J.T.S.,** Vol. II, pág. 109; *Martínez Soria v. Ex Parte Tribunal Superior,* 139 D.P.R. 192 (1995), Sentencia de 1ro de noviembre de 1995, pág. 198; *Hernández Agosto v. López Nieves,* 114 D.P.R. 601 (1983).

Nuestra Regla 16.1 de Procedimiento Civil, 32 L.P.R.A., Ap. III, dispone:

*"Las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante y rehuse hacerlo, podrá unirse como demandada."*

La Regla 16.2, *supra*, provee además:

*"El tribunal podrá ordenar la comparecencia de aquellas personas sujetas a su jurisdicción, que a pesar de no ser partes indispensables, podrán ser acumuladas si se ha de conceder un remedio completo a las personas que ya sean parte en el pleito."*

La Regla 16.1, *supra,* salvaguarda dos fines: (1) la protección constitucional que impide que persona alguna sea privada de la libertad y propiedad sin un debido proceso de ley, Artículo II, Sección 7, Constitución del Estado Libre Asociado de Puerto Rico; y (2) la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea uno completo. Además, la Regla persigue proteger a las personas ausentes de los efectos perjudiciales que puede tener la resolución de un caso sin su presencia, y, así, evitar multiplicidad de pleitos mediante un remedio efectivo y completo. *Granados v. Rodríguez Estrada I,* 124 D.P.R. 1, Opinión de 22 de junio de 1989, **89 J.T.S. 78,** pág. 7130; Cuevas Segarra, *op. cit.,* pág. 106.

El crisol que debe superar quien alega ser parte indispensable en un pleito requiere un interés común sin cuya presencia no pueda adjudicarse la controversia. El concepto de parte indispensable se refiere a aquella parte cuyos derechos podrían ser destruidos o inevitablemente afectados por una sentencia dictada estando ausente del litigio. *Torres v. Aponte,* Opinión de 7 de febrero de 1994, **94 J.T.S. 12,** pág. 11496, citando a Cepeda *Torres v. García Ortiz,* Opinión de 12 de febrero de 1993, **93 J.T.S. 20,** pág. 10396. La parte indispensable es aquélla que tiene tal interés en la controversia planteada en un pleito, que no puede dictarse un decreto final entre las partes sin que sus derechos se lesionen y afecten radicalmente. *Hernández Agosto v. López Nieves,* 114 D.P.R. *supra*; *Hernández Agosto v. Romero Barceló,* 112 D.P.R. 407, 412-413 (1982).

En la determinación de parte indispensable, tres asuntos deben ponderarse: si hay un interés común, quién es la parte que defenderá tal interés, y además, cuál es un remedio completo. El *"interés común"* no concierne a cualquier interés en un pleito, sino a uno de tal orden que impida un decreto judicial sin afectar dicho interés.

Por otro lado, la frase *"sin cuya presencia no pueda adjudicarse la controversia",* se refiere a la persona o entidad ausente que pretende intervenir para proteger un interés real e inmediato en la cuestión que se dilucida, al extremo que su ausencia impediría la confección de un decreto adecuado en ese pleito. *Hernández Agosto v. López Nieves, supra*, págs. 607-608.

El *"remedio completo"* al que se refiere la Regla 16.1 es el remedio entre las partes en el pleito en el cual se pretende intervenir; no el que pretende obtener el ausente interventor contra una parte en ese pleito. *Hernández Agosto v. López Nieves, supra,* pág. 607. Además véanse, *Vencedor Development v. Autoridad de Carreteras,* Opinión de 22 de junio de 1994, **94 J.T.S. 95;** Rodríguez *Rodríguez v. Moreno Rodríguez,* Opinión de 30 de marzo de 1994, **94 J.T.S. 43.**

La determinación final de una controversia sobre si una parte ausente debe o no acumularse a un pleito, depende de los hechos específicos de cada pleito en particular. Esa determinación requiere una evaluación jurídica de factores tales como: tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad. El Tribunal Supremo de Puerto Rico ha expresado que no es suficiente que el ausente haya tenido la oportunidad de intervenir en el pleito, pues mientras no se le haya hecho parte, no se le pueden privar de sus derechos mediante sentencia. *Granados v. Rodríguez Estrada I, supra,* pág. 7130. Asimismo, se señaló allí que la Regla:

*"[d]ebe interpretarse de forma pragmática para salvaguardar no sólo el interés de las partes en el litigio, sino también para vindicar el interés público de conservar los escasos recursos judiciales y evitar la multiplicidad de acciones y la posibilidad de adjudicaciones incompatibles."*

Sin embargo, el Tribunal Supremo también ha advertido que cuando el ausente puede evitarse un posible perjuicio mediante su comparecencia voluntaria o su intervención, mal puede escudarse tras la Regla 16. Aun presumiendo que pueda ocurrir un perjuicio, en sus manos está evitarlo. La pertinencia e importancia de este factor de orden práctico fue afirmada en *Hernández Agosto v. López Nieves, supra,* págs. 609-610.

La Regla 16, *supra,* emula la Regla 19(a) de Procedimiento Civil Federal. Por ello, la interpretación de la misma goza de valor persuasivo en nuestra jurisdicción. *Hernández Agosto v. López Nieves, supra,* pág. 607. Interpretando la Regla 19 se ha resuelto que al presentarse una acción contra un demandado por una transferencia ilegal de una propiedad a una parte ausente en el pleito, aun teniendo interés en la propiedad, no se considera parte indispensable si el remedio puede concederse sin afectar el interés de la parte ausente. *Ferme Rimouski, Inc., v. Limousin West. Inc.,* 620 F.Supp. 552, 555 (D.C.Colo. 1985). Así, pues, cuando el tribunal puede conceder el remedio solicitado por la parte demandante sin afectar el interés de la parte ausente, no se considera que dicha parte sea indispensable. *Id.* Además, véanse, Wright, Miller & Kane, *Federal Practice and Procedure: Civil,* 2d. Sec. 1602 (1980); *Blizzard v. Penley,* 186 F.Supp. 746, 750 (D. Colorado 1960).

Nuestra regla, sin embargo, permite que el tribunal ordene la comparecencia de aquellas personas que, a pesar de no ser partes indispensables en el sentido de la Regla 16.1, deban ser acumuladas para poder conceder un remedio completo a las personas que ya sean parte en el pleito. Sin embargo, esta facultad es discrecional del tribunal. *Granados v. Rodríguez Estrada I, Supra; Hernández Agosto v. López Nieves, supra.*

Los demandados-apelantes apuntan a tres asuntos por los que entienden debemos revocar ante la ausencia de parte indispensable. Primero, la existencia de una vivienda en el área cercana a la colindancia. Segundo, que el perito concluyó que esa persona (Pedro Ferrer) era dueña del predio por haber vivido allí más de 20 años. Tercero, que el demandante-apelado, Lorenzo González, puso en conocimiento al tribunal de la presencia de la parte indispensable, además de que, del plano utilizado por el tribunal para tomar su determinación, se desprende la existencia de una estructura y de que un tal Pedro Ferrer ocupa otra parte del terreno que finalmente le fue adjudicado a Lorenzo González.

Los tres asuntos presentados ante nos por los demandados-apelantes no nos persuaden. Definitivamente, la conclusión del perito sobre la prescripción adquisitiva excede su competencia. Si bien es cierto que la Regla 59 de Evidencia, 32 L.P.R.A. Ap. IV, autoriza el nombramiento de un perito por parte del tribunal, éste no tiene inherencia alguna en la determinación sobre prescripción adquisitiva. Tal función le corresponde a los tribunales de justicia a través de los métodos de prueba establecidos en las Reglas de Evidencia. Este asunto requiere cierto grado de consideración pues afecta los demás señalamientos. La inclusión del predio de la parte indispensable (Pedro Ferrer) se originó en el plano de mensura confeccionado por el agrimensor Jorge González Fuentes. Este, en su informe al tribunal, hizo la siguiente observación *"También aparece localizada una casa de madera y*

*zinc que aún la viven y la cual tiene servicio de luz [sic] desde 8-10-70 según certificación de Energía Eléctrica...".* Informe del agrimensor González Fuentes, pág. 3 inciso 7. Ese fue el punto de partida para que el ingeniero Suárez Alfonso emitiera la siguiente recomendación en su informe final: *"Que el Lote comprendido entre los puntos 2, 3, 6 y 7, o sea donde está ubicada la residencia, sea adjudicado a la parte demandada, ya que han ocupado esta residencia en calidad de dueño por más de 20 años de forma pacífica."* Informe del ingeniero Suárez Alfonso, pág. 2. El perito podía reconocer que en dicho terreno se encontraba una residencia, incluso el asunto sobre la energía eléctrica, pero la determinación final sobre prescripción adquisitiva le compete al tribunal. Los demandados-apelantes estaban en la obligación de desfilar prueba al respecto. La inclusión de Pedro Ferrer en el plano de mensura fue inacertada. Afortunadamente, el tribunal sentenciador separó el trigo de la paja al tomar la determinación final de la controversia.

Los dos asuntos restantes presentan un grado de inconsistencia y ambiguedad. Aunque primero los demandados-apelantes sugieren que la vivienda de la parte indispensable está en un área cercana al terreno objeto de esta controversia, luego apuntan a que un tal Pedro Ferrer ocupa otra parte del terreno que finalmente le fue adjudicado a Lorenzo González.

Al analizar ambos puntos, con relación a la ausencia de parte indispensable, debemos hacerlo desde la perspectiva de la acción reivindicatoria.

Acción Reivindicatoria

Los derechos reales son *erga omnes*: ésta es una de las características fundamentales de aquéllos. Así, Roca Sastre ha definido el derecho real como:

*"[E]l derecho subjetivo que atribuye a su titular un poder que entraña el señorío, completo o menos, sobre una cosa, de carácter directo y excluyente, protegido frente a todos, sin necesidad de intermediario alguno individualmente obligado, si bien, principalmente en los derechos reales limitados, impone al que en cada momento sea dueño de la misma cosa, un pati o non facere, posiblemente conectado con un facere."*

Roca Sastre, Derecho Hipotecario, Bosch, Editorial S.A., 7ma edición, Barcelona, 1979, tomo II, pág. 652.

Puig Brutau, citando con aprobación a SOHM, entiende que la acción reivindicatoria es la acción de propiedad por excelencia. José Puig Brutau, *Fundamentos de Derecho Civil*, Bosch, Editorial S.A., Barcelona, 4ta ed., 1994, tomo III, Vol. I, pág. 162. Constituye la más eficaz y enérgica defensa de la propiedad. Eduardo Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño*, Equity Publishing Co., New Hampshire, 1991, tomo VII, pág. 324.

Así, pues, la acción reivindicatoria es una consecuencia directa de la característica *erga omnes* del derecho real de propiedad. Toda vez que, en su acepción negativa, faculta al titular del derecho a excluir a los demás del ejercicio de aquellos derechos inherentes a la cosa. Por ello, la acción reivindicatoria no sólo afirma el derecho de propiedad, sino -también- pretende definir el objeto sobre el cual recae el derecho. José Puig Brutau, *Compendio de Derecho Civil*, Bosch, Editorial S.A., Barcelona, Vol. III, 1989, págs. 44-46.

En virtud de la acción reivindicatoria, el titular de la cosa que ha sido privado de la misma, se dirige contra quien la detenta sin pertenecerle, con el propósito de recobrarla. Eduardo Vázquez Bote, *supra*, pág. 325.

Para ejercer la acción reivindicatoria es necesaria la concurrencia de los siguientes elementos: (1) un título legítimo de dominio del demandante; (2) que dicho título sea superior al del demandado, -o el de éste sea nulo o inexistente; (3) el hecho de que el demandado se encuentra en la posesión de la cosa reivindicada; y, (4) la identidad de la cosa a reivindicarse. José Puig Brutau, *Fundamentos de Derecho Civil*, *supra*, pág. 170. Véanse además; *Soc. Gananciales v. González Padín Co.*, 117 D.P.R. 94 (1986); *Pérez Cruz v. Fernández Martínez*, 106 D.P.R. 144 (1977); *Sucn. Meléndez v. Almodóvar*, 70 D.P.R. 527 (1949).

Ahora bien, la acción reivindicatoria corresponde al propietario de manera exclusiva, y aun cuando éste nunca hubiese llegado a tener la posesión de la cosa a reivindicarse. El demandante debe probar que es el propietario de la cosa que reclama, si bien no es indispensable presentar un título escrito de dominio. De ser ese el caso, basta la prueba por cualquier otro medio. El reivindicante tiene la carga o el peso de la prueba. Asimismo, surge que la legitimación pasiva en la acción reivindicatoria, o sea, contra quien va dirigida la acción, es el poseedor de la cosa. Este no ostenta derecho alguno que le faculte para poseer. Procede la acción reivindicatoria sólo para reclamar la cosa señalada de manera determinada y concreta sin que sea posible pedir otra de la misma especie y calidad, se hace absolutamente necesario comprobar su identidad. *Verges et al v. Pietri et al,* 9 D.P.R. 20, 87 (1905). Se da por cumplida tal exigencia cuando se precisa la situación, cabida y linderos del inmueble de que se trate. *Almodóvar v. Nolla,* 85 D.P.R. 771 (1962). Esta es la doctrina vigente desde época tan remota como las Siete Partidas. *Pérez Cruz v. Fernández,* 101 D.P.R. 365, 373-374 (1973). El efecto obligado de la concurrencia de los requisitos aquí apuntados en una acción reivindicatoria será el pronunciamiento de la restitución al demandante de la posesión del objeto de su dominio. En la sentencia, además, estará implicada la liquidación de tal estado posesorio dependiendo de la buena o de la mala fe con que haya poseído el demandado. José Puig Brutau, *supra,* pág. 50.

La identificación que se exige al demandante consiste en demostrar que la finca que se reclama es la misma a la que se refieren los documentos que dicha parte presente en evidencia para acreditar su justo título de dominio. *Pueblo v. Rojas,* 53 D.P.R. 121, 125 (1938). Tiene que probarse claramente que la finca que se reclama es la misma cuyo dominio se alega, fijando su identidad, la eficacia y validez de los títulos que se han aducido.

Definitivamente, el demandante-apelado, Lorenzo González, cumplió con las exigencias de la acción reivindicatoria. Identificó el predio a ser reivindicado, evidenció que el predio era aquél ocupado por Ferrer y Almodóvar, y demostró su titularidad dominical sobre el predio a través de escritura pública. Correspondía entonces al demandado probar, contrario a lo establecido por la prueba de Lorenzo González, que la porción que él reclama estaba en posesión del demandante y no de cualquier otro colindante. *Almodóvar v. Nolla, supra.* En la alternativa, tenía el peso de la prueba para demostrar la posesión de un título superior al de Lorenzo González. Ninguna de estas cosas hicieron los demandados-apelantes, Ferrer y Almodóvar.

No estamos ante la ausencia de parte indispensable. Si el predio de la parte indispensable es uno colindante, como se deduce del primer párrafo del primer señalamiento de error, Escrito de Apelación, pág. 4, huelga considerar el asunto pues, de ser así, el predio a ser reivindicado en nada afectaría al colindante.

Ahora bien, consideremos la posibilidad de que el predio a ser reivindicado está en posesión de un tercero, como alegan los demandados-apelantes. Escrito de Apelación, pág. 5. Alegan Ferrer y Almodóvar que una porción del terreno adjudicado en la sentencia a los demandantes-apelados, González y Cordero Salas, ubica en el dominio de un tal Pedro Ferrer, quien, aparentemente, es el padre de Garde Ferrer, demandado-apelante. Sus escuetos argumentos al respecto no nos convencen. Se limitan a señalar dos asuntos: (1) que la parte demandante puso en conocimiento al tribunal sobre la presencia de otras personas con interés en el pleito y (2) *"que se desprende clara y contundentemente del plano preparado por el agrimensor González Fuentes la existencia de una estructura y que un tal Pedro Ferrer ocupa otra parte del terreno que finalmente le fue adjudicado a la parte demandante". Id.*

Los demandados-apelantes tienen el peso de la prueba para ilustrarnos con respecto a qué derecho o razón, si alguna, podría oponer la parte contra los reivindicantes. No basta con apuntar a la mera posibilidad de la existencia de tal persona. Los demandados-apelantes ni siquiera describen los puntos en que se encuentra tal propiedad, aunque admite Ferrer que la parte cuya presencia es indispensable es su señora madre. Véase, Escrito de Apelación, nota al calce núm. 15. Los demandados-apelantes tampoco solicitaron una exposición narrativa de la prueba oral (Regla 54.2 de Procedimiento Civil, según enmendada). Véase, Resolución de 24 de octubre de 1997.

Concluimos, pues, que los demandados-apelantes pretenden utilizar la parte indispensable como un subterfugio para presentar de forma tardía la defensa de usucapión. La defensa afirmativa de

usucapión debió formularse como una alegación responsiva durante el pleito, de lo contrario se renuncia. Conocido es que nuestro sistema de Derecho es rogado. Por ello, como norma general, la defensa afirmativa no presentada se entiende renunciada. Así la Regla 6.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone:

*"Al responder a una alegación precedente, las siguientes defensas deberán expresarse afirmativamente: transacción, aceptación como finiquito, laudo y adjudicación, asunción de riesgo, negligencia, exoneración por quiebra, coacción, impedimento, falta de causa, fraude, ilegalidad, falta de diligencia, autorización, pago, exoneración, cosa juzgada, prescripción adquisitiva o extintiva, renuncia y cualquier otra materia constitutiva de excusa o de defensa afirmativa. Cuando la parte denomine equivocadamente una defensa como una reconvención, o una reconvención como una defensa, el tribunal, si así fuere de justicia y bajo los términos que estime apropiados, considerará la alegación como si hubiere sido correctamente denominada."*

La renuncia por desuso ha sido reiterada en *Olmeda Nazario v. Sueiro Jiménez,* 123 D.P.R. 294 (1989); *Odriozola v. Cosmetic Dist. Corp.,* 116 D.P.R. 485, 506 (1985); *Ramos v. Trans Oceanic Ins. Co.,* 103 D.P.R. 298, 300 (1975).

## III

Como segundo error se plantea que Suárez Marchán resolvió mal porque no fue él, sino el fenecido Juez José L. Capella Capella quien presidió el juicio en su fondo. Al respecto la Regla 64 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que:

*"Si por razón de muerte, enfermedad, o por cualquier otra razón, un juez no pudiere continuar entendiendo en un asunto, otro juez podrá actuar en su lugar; pero si éste se convenciere de que no puede desempeñar dichos deberes, sin la celebración de un nuevo juicio sobre todos o parte de los hechos o sin oír nuevamente a algún testigo, podrá tomar las medidas que fueren necesarias para resolver el pleito."*

El planteamiento de los demandados-apelantes, Ferrer y Almodóvar, en torno a la necesidad de que quien aprecie la prueba sea quien resuelva, no nos persuade dadas las circunstancias particulares del caso de marras. La actuación del Hon. Yamil Suárez Marchán fue correcta en derecho. Queda a su sana discreción celebrar un nuevo juicio. Véase Regla 64, *Id.* Por la naturaleza de la acción reivindicatoria objeto de este recurso la prueba documental fue determinante. Asimismo lo es para la decisión que tomamos hoy. El Hon. Suárez Marchán se encontró en la misma posición que los foros apelativos ante la prueba documental; estaba en igual posición que quien presidió la vista, pudo evaluarla y llegar a sus propias conclusiones. Así, al evaluar el informe pericial y las escrituras admitidas como prueba, el Hon. Suárez Marchán podía, como correctamente hizo, llegar a la determinación que hoy nos ocupa. Al respecto véase, *Torres Arzola v. Policía de P.R.,* 117 D.P.R. 204, 213 (1986). De un examen de la sentencia se desprende claramente que la juez sentenciadora examinó con detenimiento la prueba al tomar su determinación. Más aún, al hacerlo consideró los apuntes tomados por el Hon. Capella Capella.

Hemos considerado la jurisprudencia federal al respecto. Al hacerlo hemos considerado tanto los casos ventilados ante un jurado como los efectuados ante un tribunal de derecho. Sobre el particular véanse; *Canseco v. U.S.,* 97 F.3d 1224 (9th Cir. 1996) analizando la Regla 63 de Procedimiento Civil Federal, según enmendada en 1991; *Home Placement Service v. Providence Journal Co.,* 819 F.2d 1199 (1st Cir. 1987); *Knott Co. v. Chesapeake & Potomac Tel. Co.,* 772 F.2d 78 (4th Cir. 1985); *Townsend v. Gray Line Bus Co.,* 767 F.2d 11 (1st Cir. 1985); *Whalen v. Ford Motor Credit Co.,* 684 F.2d 272 (4th Cir. 1982). Estos no alteran nuestra conclusión de que el Juez Suárez Marchán no venía obligado a celebrar una nueva vista evidenciaria.

No estamos ante pasión, prejuicio, parcialidad o error manifiesto. La decisión del foro de instancia está ampliamente sostenida por la prueba. Por consiguiente, el error señalado no se cometió.

## IV

Así, pues, por los fundamentos expuestos, se confirma la sentencia apelada.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General